NelsoN, J.,
delivered the opinion of the Court.
A warrant was issued by a justice of Tipton county, and duly executed on the plaintiff in error, 14th January, 1867, in which D. C. Slaughter, trustee, etc., was plaintiff, and the plaintiff in error, as executor de son tort of H. S. Pitt, deceased, was defendant. The warrant was in a plea of debt due by note, executed by said Pitt in his lifetime, under five hundred dollars. Judgment was rendered by the justice in defendant’s favor, and plaintiff appealed to 'the Circuit Court, where judgment was rendered in his favor, 4th May, 1868, for $100.69 and costs; and execution was awarded to be levied on the goods and chattels of the said H. 'S. Pitt, then in the hands of said Winn, if there be so much; and if there be not a sufficient amount *196 of goods and chattels, then upon tbe proper goods and chattels, lands and tenements of said W. H. Winn, not to exceed tbe amount of $383.43, which said judgment declares was the amount proven to be in his hands as executor. From this judgment the plaintiff in error prosecutes this appeal.
The facts of the case were agreed upon in the Circuit Court, and are, substantially, that Henry S. Pitt, in his lifetime, executed the note sued upon; that he died intestate 13th January, 1864, leaving -a widow and two children; that no administration was granted on his estate; that the only property- which he owned, not exempt from execution, was a quantity of cotton grown upon the place where he lived at the time of his death; that the widow caused the cotton “to be gathered,” and sent it to St. Louis by B. F. Locke, in the winter following Pitt’s death; that Locke sold the cotton for $338.43, and paid the proceeds, upon the widow’s request, to Winn, who was her friend and neighbor; that early in the summer of 1865 Winn and the widow were married to each other; that in December, 1865, Winn commenced paying off the debts of the deceased; and that he made various payments, specified in the agreed case, of just debts due from the estate, amounting in the aggregate to about the sum of $651.60.
Upon this state of facts, his Honor the Circuit Judge held that Winn is liable, as executor de son tort of Pitt, and rendered the aforesaid judgment against him.
It is manifest, from the agreed case, that the es-
*197 tate of Pitt was insolvent, and that Winn paid out a much larger amount than came to his hands. For the defendant in error, it is strenuously insisted that it is contrary to the provisions of our statutes, providing for a pro rata distribution among the creditors of the proceeds of the estates of 'persons dying insolvent, to permit an executor in his own wrong to pay some of the creditors in full without making any payments to others; and we are referred to 4 Bouv. Bac. Ab. 33, where it is. said in the addenda by the editor, that “when the estate is insolvent, though an executor de son tort pay voluntarily to some creditor double the amount of Avhat he has received, it does not exonerate him from liability.” The editor refers, in support of this position, to Neal v. Baker’s Ex’r, 2 N. H. Rep., 477, a book to which we have here no access.
In the cases which have heretofore been determined by this Court, in relation to the assumed rights, duties and liabilities of an executor de son tort, it has been held, among other rulings, that the policy of the law is against the unauthorized intermeddling with the estates of deceased persons; that one who wrongfully or fraudulently gets possession of such property, may be held liable as an executor de son tort; that a creditor of an estate who obtains payment of a debt from a widow, before administration, out of the assets, may be held liable in that character as well as the person making the payment; that suit may be brought against the executor de son tort by a creditor or the rightful administrator; that a suit commenced against the deceased may be revived against such executor; but, *198 when sued in that character, he may defend by plea that he has fully administered the assets which came to his hands, or that he has paid the value to creditors or the rightful administrator, or any other defence which may have accrued to him after the wrongful taking. See 3 Sneed, 319; 10 Yer., 371; 4 Hay., 289; Ib., 297; Heis. Dig., 31, 32.
Under the statute, 43 Eliz., ch. 8, an executor de son tort was expressly authorized to deduct, “to and for himself, allowance of all just, due, and principal debts, upon good consideration, without fraud, owing to him by the intestate at the time of his decease, and all other payments made by him:” 4 Bouv. Bac. Ab., 28. But in Partee v. Caughran, 9 Yerg., 460, it was held that an executor of his own wrong is not permitted to retain; while in Cobb v. Lanier, it was said that an executor de son tort might plead that he had paid the value of .the estate, which came into his hands, to creditors or the rightful representative, or any other of the many defences which he might have acquired since his original liability: 3 Coop. Hay. Tenn. B., 429, 430, foot paging. This is in accordance with the doctrine stated in 1 Williams on Ex., where it is said that an executor de son tort may plead plene administravit and shall not be charged beyond the assets which came to his hands, and it is added that “in support of this plea, he may give in evidence the payments by himself, of just debts of the deceased, of equal' or superior degree, to that on which the action is brought, which have exhausted such assets. So, even after action brought, he may apply *199 the assets which are in his hands to the payment of a debt of superior degree, and plead such payment in bar of the action:” 1 Will. on Ex. 5 Am. Ed., 233. See also " Glenn v. Smith, 2 Gill. & Johns., 493; Russell v. Lanier, 3 Coop. Hay. Tenn. R., 423, 424, foot.
The Code in sections 2250, 2251, which are the same as the act of 1784, ch. 4, s. '2, interferes to-some extent with the ancient order of paying debts by a personal representative, and .declares that debts due upon bills single, bonds, bills of exchange, promissory notes, and settled and liquidated accounts -signed by the debtor, are of equal dignity and to be' paid accordingly; but that in all other respects, personal representatives shall have the right of preference in the payment of creditors as they have heretofore had by law.
From these provisions, as well as the authorities-referred to, it is clear upon the agreed case, that the plaintiff in error, who paid just debts against the estate to an amount almost twice as large as that which came into his hands, thereby exonerated himself from all liability as executor de son tort, in as ample a manner as he could have done upon a plea of pleno administramt to an action brought in Court, unless the alleged insolvency of the estate changes the nature of his accountability. The policy of causing the proceeds of the estates of persons dying insolvent, to be equally distributed among the creditors, which was commenced in this State by the act of 1833, c. 3, Car. & Yich., 395, was fostered and encouraged by subsequent legislation, until it resulted in the extensive *200 and well regulated system provided in the Code, sections 2329 to 2398. The basis of the system is section 2326, which declares that “insolvent estates of deceased persons shall be divided among the creditors ratably; and no action brought, judgment, bill single, or note of hand, shall have precedence over unliquida-ted accounts, presented and filed, authenticated according to law, but all such claims shall be acted upon as being of equal grade.” It is, primarily, made the duty of the executor or administrator to report the insolvency to the County Court, but by section 2329, any creditor may make the suggestion, and where the estate exceeds the sum of $1,000, mentioned in section 2327, a bill may be filed in Chancery under section 2326, by the personal representative, or by any creditor. As the estate in this case was of less value than $1,000, it could have been administered as an insolvent estate in the County Court, and by sec. 2332, the suggestion of insolvency and advertisement thereof, operates as an injunction against the bringing of any suit against the administrator or executor of such insolvent estate. Under the provisions of the statute, there is no case under which a creditor can obtain satisfaction of his entire debt out of the effects of the estate, to the injury of other creditors, and it matters not what the form of proceeding is, in every case the creditor collecting a fund under the statute, is a trustee for creditors and others interested in the estate. See Rains v. Rainey, 11 Hum., 263, 264.
There can be no doubt that the defendant in error could have maintained a suit in equity against the *201 creditors to whom the said sum of $338.43 was paid, if the insolvency of the estate had been regularly ascertained, on the ground that a creditor could follow the' trust fund into the hands of such intermeddlers; and if any administrator had been appointed, he could have sued them as executors of their own wrong, as was determined in Mitchell v. Kirk, 3 Sneed, 320. But upon what principle can the present action be maintained by one creditor against the plaintiff in error as such executor? The effect of such an action, if sustained, would be to enable the creditor to defeat the leading objects of the law as to insolvent estates by collecting his debt in full to the prejudice of other creditors, and thus to do the very thing which, it is alleged, the plaintiff in error has done by paying out the fund to a portion of the creditors in preference to, or exclusive of, others. Nothing short of a suggestion of the insolvency of the estate, and a proceeding by bill in equity in the County Court, would enable the creditor to obtain his ratable share of the assets. Many of the acts of an executor de son tort are lawful. The Code, s. 2284, authorizes the widow to take into her possession and care all the estate of her deceased husband and the crop then growing; and it seems that she deposited the fund arising from the sale in the hands of the plaintiff in error, as her neighbor and friend, and that he did not begin to pay it out until after his marriage to her. It is said that “if another man takes the goods of the deceased and sells or gives them to me, this shall charge him as executor of his wrong, but not me:” 1 Will, on Ex’rs, *202 229; 2 Steph. Nisi P., 1868. If this principle is not recognized in the cases to which we have referred, there is no sound principle upon which the plaintiff in error, who seems to have acted in good faith, and to have paid out largely more than came into his hands, can be held liable. More than three years elapsed after the death of the intestate and before the commencement of this suit, and 'within that time the plaintiff below, or any other creditor, could have suggested the insolvency of the estate. This might have been done at any time before the plaintiff in error began ■ to pay out the fund which came to his hands. From aught that appears in this record the insolvency of the estate' has never been judicially ascertained and declared 'in the mode prescribed by law, and the plaintiff in error, having satisfied just debts due from the estate to an amount greater than that which came into his hands, is to be regarded, in all respects, as having fully administered the estate. Whether the creditors, by their long acquiescence in his distribution of the assets, can now hold him liable in any form of proceeding, or whether he would be accountable to an administrator if one shall be appointed, or whether such administrator could now sue the creditors whose debts were paid out of the fund, it is not necessary to determine.
This being a proceeding before a justice, and the cause being before this Court for error, the words de son tort in the warrant may, perhaps, be rejected as surplusage, but the more correct practice would have been' to describe the party sued in this . case as *203 executor merely; for it is laid down that “in an action by a creditor be shall be named executor generally, for the most obvious conclusion which strangers can form from his conduct is that he has a will of the deceased wherein he is appointed executor, but has not yet proved it.” 1 Will, on Ex., 232.
The judgment of the Circuit Court is erroneous and will be reversed.